IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

Tommie J. Rogers                                                                                    Plaintiff

v.                            No. 5:13-CV–303-DPM-JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                                           Defendant

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge D. Price Marshall.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Marshall may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## **Reasoning for Recommended Disposition**

Tommie J. Rogers seeks judicial review of the denial of his application for supplemental security income (SSI).[3] Rogers's application flows from a right leg fracture sustained in county detention in March 2008.[4] The fracture was repaired using a metal plate and screws.[5] By June 2008, the fracture had healed.[6]

In September 2008, Rogers went to prison.[7] He continued to complain about leg pain.[8] After being released on parole, he applied for SSI and based disability on leg problems.[9] Although Rogers based his claim on physical impairment, in this case, he

---

[3] SSA record at p. 133 (alleging disability beginning Jan. 1. 2008).

[4] *Id*. at p. 232 (treatment for broken right leg; he reported slipping on the way to the bathroom; at that time, he had been in detention for three months).

[5] *Id*. at p. 237 (discharge summary stating that Rogers underwent open reduction and internal fixation; discharged back to the care of the county sheriff).

[6] *Id*. at p. 253 (diagnostic imaging showed fracture had completely healed in anatomic position and alignment).

[7] *Id*. at p. 257 (Arkansas Department of Corrections initial report of physical examination; examiner noted that Rogers's physical complaints did not correlate with physical exam findings except for right ankle; limited flexion of right ankle found).

[8] *Id*. at p. 285 (restrictions against prolonged crawling, stooping, running, jumping, walking or standing extended until Jan 17, 2011; he walked with a limp and complained about joint, back, knee, and foot pain).

[9] *Id*. at p. 152 (basing his claim on leg problems). Rogers reported a left leg fracture while incarcerated in 1992. *See id*. at pp. 261 & 348.

claims he is mentally retarded.[10]

**The Commissioner's decision**.  The ALJ found no limitations associated with mental retardation.  The ALJ determined that Rogers has severe impairments — healed fracture of the right tibia/fibular, mood disorder, and personality disorder with cluster B traits[11] — but he can do some light work involving simple job instructions.[12]  Because a vocational expert identified available work within the ALJ's parameters,[13] the ALJ determined that Rogers is not disabled and denied the application.[14]

After the Commissioner's Appeals Council denied a request for review,[15] the

---

[10]Rogers's brief uses the term "intellectual disability" rather than "mental retardation."  The difference in terms flows from Rosa's law which directed federal agencies to replace the terms "mentally retarded" or "mental retardation" with "individual with an intellectual disability" and "intellectual disability."  The Commissioner made that change to the social security regulations in 2013.  Because the challenged decision was issued prior to the change, this recommendation uses the former terms.  For the same reason, this report references the DSM-IV which uses the term "mental retardation," rather than the DSM-V which uses the term "intellectual disability."

[11]SSA record at p. 21.

[12]*Id*. at p. 23 (placing the following limitations on light work: (1) two hours of standing/walking, (2) no repetitive right foot controls/pedal, (3) work involving simple job instructions and work-related judgment, and (4) minor changes in work routine).

[13]*Id*. at pp. 75-76 (identifying production inspectors/checkers/examiners like table inspector, scale operator, and printed circuit board examiner as available work).

[14]*Id*. at p. 31.

[15]*Id*. at p. 1.

decision became a final decision for judicial review.[16] Rogers filed this case to challenge the decision.[17] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[18] This report explains why this case should be remanded to develop evidence about intellectual functioning.

**Rogers's argument**. According to Rogers, the ALJ should have identified mental retardation as a severe impairment. Rogers maintains he meets listing 12.05B — a listing for mental retardation — because he scored 59 or less on post-hearing IQ testing. Thus, Rogers contends the ALJ should have awarded benefits.[19]

<u>Applicable legal principles</u>. "To qualify for disability under a listing, a claimant carries the burden of establishing that his condition meets or equals all specified

---

[16]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[17]Docket entry # 1.

[18]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[19]Docket entry # 14.

medical criteria."[20] Meeting a listing for mental retardation requires proof of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."[21] Meeting listing 12.05B requires a valid verbal, performance, or full scale IQ score of 59 or less.[22]

IQ scores. Post-hearing IQ testing is the only significant evidence of mental retardation: full scale score: 58, verbal comprehension score: 56, and processing speed: 59.[23] The scores fall within the required range for proving mental retardation under listing 12.05B, but the ALJ implicitly rejected the scores as unreliable by finding no impairment due to mental retardation. The ALJ provided the following reasons for disagreeing with the testing examiner's diagnosis of mental retardation:

1. No history of mental retardation until the post-hearing consultative exam.

2. A prior mental consultative exam for a prior application noted a possibility of malingering.

3. Rogers testified that he can read, write, and do basic math.

4. Rogers initially reported completing eleventh grade without special

---

[20]*McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (citations omitted).

[21]20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2012).

[22]20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B (2012) (specifying one way of meeting listing for mental retardation).

[23]SSA record at p. 418.

5

        education.

    5.    There's no evidence of a formal diagnosis of mental retardation before age 22.[24]

These reasons provided an insufficient basis for rejecting the diagnosis for the following reasons:

**Reason #1: no history of mental retardation**. Rogers was 47 years old when he obtained the scores underlying his claim. He does not recall an earlier testing.[25] Thus, there's no history of mental retardation. Although the lack of history weighs against Rogers's claim, "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."[26] Unrebutted, the presumption provides a basis for arguing that a score obtained after age 22 represents the claimant's intellectual functioning before age 22. The ALJ failed to recognize the presumption of a stable IQ, and thus, cited no evidence evidencing a change in intellectual functioning.

**Reason #2: prior mental consultative exam noted a possibility of malingering**. An earlier mental diagnostic exam may have raised the issue of malingering, but the exams in the record do not implicate malingering as to intellectual functioning. The

---

[24]*Id*. at p. 26.

[25]*Id*. at p. 64.

[26]*Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001).

record includes two reports of mental diagnostic exams.  The first psychological examiner observed signs of malingering as to Rogers's chief symptom allegation — hearing voices[27] — but not as to intellectual functioning.  The first examiner reported that Rogers appears to function "within or near the mentally retarded range."[28]  That report prompted Rogers's attorney to request IQ testing.[29]  The second, testing psychologist reported that the "test results are an accurate estimate of [Rogers's] current level of intellectual functioning."[30]  The second examiner observed no evidence of malingering or exaggeration.[31]  As a result, the medical opinions in the record are consistent in regard to malingering as to intellectual functioning.  If there is a medical opinion implicating malingering as to intellectual functioning, it is not in the record.

**Reason #3: Rogers testified that he can read, write, and do basic math**. According to diagnostic criteria, Rogers's scores fall within the range of mild retardation.[32]  People with mild retardation can learn practical skills, including reading

---

[27]According to the first examiner, Rogers's exhibition of the voices he hears was "just plain silly."  SSA record at p. 409.  The examiner opined that Rogers is probably capable of deception.  *Id*. at p. 410.

[28]*Id*. at p. 409.

[29]*Id*. at p. 50.

[30]*Id*. at p. 418.

[31]*Id*. at p. 419.

[32]Diagnostic & Statistical Manual of Mental Disorders 42 (4th ed.) (text rev.).

and math, up to about the sixth grade level.[33]  Rogers reported that he can read and write,[34] and use a checkbook and a savings account.[35]  He can add, subtract, multiply, and divide.[36]  He can make change and write a letter.[37]  Because many sixth-graders have these skills, Rogers's testimony doesn't weigh against a claim of mental retardation.

**Reason #4: initial report of eleventh grade education without special education**.  Students with intellectual disabilities often receive special education in primary and secondary school.  Although Rogers reported no special education when he applied for SSI, that report holds little probative value because it flowed from a telephone interview.[38]  If Rogers has an intellectual disability, he may not have understood the agency interviewer.  The record reflects no effort to obtain school records or affidavits which might substantiate reports of special education.

**Reason #5: no formal diagnosis before age 22**.  The record doesn't include a

---

[33]*Id*. at p. 43; Paula Anne Ford-Martin, Emily Jane Willingham & Rebecca J. Frey, 1 The Gale Encyclopedia of Mental Health 821 (3d ed.).

[34]SSA record at p. 151.

[35]*Id*. at p. 162.

[36]*Id*. at p. 52.

[37]*Id*. at pp. 65-66.

[38]*See id*. at pp. 148 & 153.

formal diagnosis of mental retardation before age 22, but a claimant doesn't need a formal diagnosis to meet a listing for mental retardation; instead, a claimant must demonstrate or support the onset of impairment before age 22.[39] Consequently, the lack of a formal diagnosis before age 22 does not weigh against Rogers's claim.

**The record needs development**. Although determining the question of mental retardation in late adulthood places an ALJ in a difficult position, an ALJ still has a duty to develop the record fully, even when the claimant is represented by an attorney.[40] An undeveloped record risks over-estimating the claimant's intellectual functioning. There's no bright line rule for determining whether the ALJ has adequately developed the record — because "an assessment is made on a case-by-case basis"[41] — but this case calls for further development.

First, the reliability of Rogers's IQ scores requires development. The ALJ was understandably suspect of a claim based on IQ scores obtained at age 47 because there is no earlier evidence of mental retardation. Moreover, Rogers's exaggeration of his physical complaints undermined his claim about mental retardation. Rogers alleged

---

[39] *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006).

[40] *Gamber v. Bowen*, 823 F.2d 242, 245 (8th Cir. 1987).

[41] *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

disabling pain in his back, neck, legs, knees, and ankles,[42] but the physical examiner found only minimal limitations.[43] The ALJ can resolve the issue of reliability by ordering additional IQ testing, to include a malingering detection instrument.

Second, evidence of onset requires development. Even if Rogers's IQ scores are valid, the scores are not enough to prove he is mentally retarded. He needs evidence demonstrating or supporting onset before age 22. Validating his scores will further his claim, but primary and secondary education records can eliminate doubt. The record reflects no effort to develop evidence of onset. The 38 days between the time the IQ scores were reported and the date of the ALJ's decision provided time for Rogers's attorney to present evidence demonstrating or supporting onset, but the record reflects no action by Rogers's attorney. The ALJ should direct the attorney to provide evidence of onset.

## Recommended Disposition

The record is undeveloped as to the reliability of Rogers's intellectual functioning and onset of impairment. As a result, the ALJ's reasons for rejecting the diagnosis of mental retardation do not support the rejection of the diagnosis of mental retardation. For these reasons, the undersigned magistrate judge recommends REVERSING the

---

[42]SSA record at pp. 175 & 185.

[43]*Id*. at p. 352.

decision and REMANDING the case to the Commissioner with the following instructions:

> On remand, the ALJ shall obtain: (1) additional IQ testing, to include a malingering detection instrument, and (2) evidence of onset before age 22, to include primary and secondary school records, if available. If the ALJ finds IQ scores unreliable, the ALJ shall explicitly explain why the scores are inconsistent with the record. The ALJ shall then consider the evidence as a whole and determine Rogers's ability to work.

Dated this 4th day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE